FILED
2015 Nov-24  PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SHONNE GUY,                          }
                                     }
        Plaintiff,                   }
                                     }      CIVIL ACTION NO.
v.                                   }
                                     }      2:14-CV-2391-WMA
BESSEMER AL AUTOMOTIVE, LLC,         }
                                     }
        Defendant.                   }

**MEMORANDUM OPINION**

Before the court is a motion for summary judgment (Doc. 19) filed by defendant Bessemer AL Automotive, LLC ("Landers McLarty"). For the reasons stated below, the motion will be granted.

**BACKGROUND**[1]

Plaintiff Shonne Guy ("Guy") was employed by Landers McLarty as a car salesman from July 2010 until March 2013. (Doc. 21-16 at 2, ¶ 2). As a salesman, Guy was subject to several different policies, many but not all of which were contained in the dealership's Employee Handbook. (*See* Doc. 32-4). The handbook stated that violation of any policy may result in termination, but termination may occur for other circumstances as well. (Doc. 32-4). One of those policies, the Salesperson Pay Plan ("Sales Policy"), required Guy to sell eight vehicles per month. If he did not reach that quota in a given month, he would be placed on a 90-day

---

[1]The facts are presented in the light most favorable to Guy, the non-movant. *See Skrtich v. Thornton*, 280 F.3d 1295, 1299 (11th Cir. 2002).

probation. If he failed to sell eight units in a month during the
probation period, he could be terminated. (Doc. 21-4). Guy was
written up twice during his employment for violating the Sales
Policy, but neither of those write-ups occurred when he was in a
probationary period. (Docs. 21-5, 21-6). The parties dispute
whether additional verbal counseling occurred regarding Guy's
sales, which would not appear in his employment file.[2] (*See* Docs.
21-2 at 104:14-25, 35[3] at 19:11-18).

Guy was also subject to a Use of Company Vehicle Policy
("Vehicle Use Policy"). That policy provides:

> 1. I understand that if I find it necessary to use a
> company vehicle for any reason without a customer in the
> vehicle with me that I must have approval from the desk
> manager and sign a demo agreement or I will be terminated
> immediately.
> 2. I understand that it is against company policy for me
> to use a company owned vehicle for personal use, (getting
> lunch, running to gas station, or any personal errands)
> and is grounds for immediate termination.
> 3. I understand that if I allow anyone to use a company
> owned vehicle that I have to get permission from the
> vehicle director, GSM [General Sales Manager], or GM
> [General Manager] and have verified full coverage
> insurance. I also understand that allowing someone to use

---

[2]Landers McLarty contends that Guy admitted to being
counseled "all the time" about failing to meet the sales
requirements, (Doc. 21-2 at 104:14-25), but the court finds that
statement to be ambiguous and will not rely on it. While
difficult to decipher from the deposition transcript, Guy may
have been saying that he was counseled "all the time" about
improving his sales, but the counseling concerned selling more
cars generally and was not only in reference to the eight per
month minimum.

[3]Pages and lines cited in this document correspond to the
marked numbers, not the actual page and line numbers.

2

> a company owned vehicle without completing this will
> result in immediate termination.
> 4. I understand that if I see or hear anyone else
> violating this policy that it is my responsibility to
> report it to management.
> 5. I understand that this serves as the first and last
> warning and that any violation of this policy will result
> in immediate termination.

(Doc. 21-1).

Keys for company vehicles were stored in a key track machine. (Doc. 35 at 43:13-19). Salespeople could access the machine using their fingerprint or a unique code. (Doc. 21-2 at 46:1-3). The key machine kept track of which person checked out and returned each key and the date and time of each action. (Doc. 35 at 43:13-22). Landers McLarty had a Key Policy in place that required salespeople to return all keys to the key track machine at the end of their shifts. (Doc. 21-3). A salesperson was allowed to check a key out on another's behalf, but such action must be noted in the machine. (Doc. 21-3). Guy testified, however, that this policy was not always followed or enforced. According to Guy, many salespeople did not return checked-out keys to the key track machine at the end of each shift, and some managers instructed the salespeople to lock keys in their desks instead of returning them. (Docs. 21-2 at 48:1-3, 32-1 at 3). Unlike other policies, the Key Policy was silent as to potential discipline. (Doc. 21-3). Before the incident in question, it is undisputed that Guy had not violated the Key Policy. (Doc. 21-12 at 4).

On April 30, 2012, Guy filed a charge of discrimination with

the EEOC against Landers McLarty, accusing the dealership of showing favoritism toward white salespeople regarding financing arrangements. (Doc. 21-7). The parties settled that charge, with the lawyers coming to terms on November 16, 2012, (Doc. 21-8 at 2), and Guy signing agreements on December 4, 2012, and January 16, 2013. (Docs. 21-10, 21-11). Landers McLarty offered to settle the charge for a higher amount if Guy resigned from the dealership, but he chose instead to settle for a lower amount and keep his job. (Docs. 21-2 at 134:10-135:1, 21-8 at 2). According to Guy, before the charge settled, Knox Williams, the general manager at Landers McLarty, called Guy into his office and questioned him about dropping his EEOC charge. When Guy indicated that he would not drop the charge, Williams "became rather agitated . . . and called the meeting to an end." (Doc. 32-1 at 6). Williams does not recall that conversation. (Doc. 35 at 89:4-13).

Guy's son, Tadarius Guy, attended college at nearby Lawson State Community College and frequently spent afternoons at Landers McLarty while waiting for his mother to pick him up. (Docs. 21-2 at 70:21-71:1, 21-12 at 8). While Tadarius was at Landers McLarty, Guy often checked out a car for him to sit in and to listen to the radio. (Doc. 21-2 at 70:21-71:1). Guy did not ask permission to do this, but according to Guy this was a common practice among dealership employees of which management was aware, and no one complained to him about it. (Doc. 21-2 at 38:2-25, 132:19-133:4).

Guy testified that he gave Tadarius strict instructions never to drive the cars. (Doc. 21-12 at 8). Guy himself was unable to drive by virtue of his three recent brain aneurysms. (Doc. 32-1 at 4).

On January 22, 2013, an inventory of the vehicles at Landers McLarty revealed that a white Chrysler 200 was missing from the lot. (Doc. 21-12 at 2). The key machine showed that Guy was the last person to check out the key, with that check-out occurring on January 4, 2013. (*Id.*). Guy does not remember what happened to that key, and he testified that any number of scenarios are possible. (Doc. 21-2 at 48:11-19). According to Guy, the sales log showed that a customer was interested in that vehicle on January 4, but other salesmen showed the vehicle to the customer (Guy even called the customer to verify this), so it is possible that he gave the key to the other salesmen without properly noting that action in the key machine. (Doc. 21-2 at 48:11-49:9). Guy also said it was possible that the key was taken from his desk or that he gave it to Tadarius to allow him to listen to music in the car. (Doc. 21-2 at 76:12-22).

The next day, Guy received a call from Tadarius' cell phone.[4] (Doc. 21-12 at 7). The call was actually placed by a Fairfield police officer, who informed Guy that the phone had been found in an abandoned car that had been involved in an accident that day.

_____

[4] Guy did not believe the phone to be Tadarius' primary cell phone because he had recently purchased Tadarius a new cell phone. (Doc. 21-2 at 52:8-13).

5

Guy confirmed with the officer that the car was the missing Chrysler 200. (*Id.*). According to the woman involved in the accident, three males in their early twenties and a six-year-old girl fled the scene immediately after the accident. (Doc. 21-2 at 53:1-4). Landers McLarty repaired the woman's car free of charge and provided her with a car to drive while her car was being repaired. (Doc. 21-15 at 5).

Guy then informed Jeff Burt, the sales manager at Landers McLarty, of the conversation with the police. (Docs. 21-2 at 26:16-21, 21-12 at 7). Burt reported the car to the police as stolen, and Landers McLarty hired an investigator. (Doc. 21-12 at 2). Soon after, Guy spoke with his son, who denied stealing the car and told him that he had lost his phone a few days earlier. (Doc. 21-2 at 43:7-15). Tadarius guessed that the phone had fallen out of his pocket at some point while listening to the radio in that car. (Doc. 21-12 at 9). Guy's niece thereafter told him that Tadarius confessed to the theft of the car. Tadarius purportedly admitted that he regularly drove the car with two friends and parked it somewhere other than at home but fled once they got into an accident with a woman. (Doc. 21-2 at 74:19-75:8). The woman also identified Tadarius out of a photo lineup. (Doc. 21-14 at 2). Burt was aware of the alleged admission and identification. (Doc. 21-14).

On February 1, 2013, Guy told Burt that he took Tadarius to

6

see a lawyer that morning and that Tadarius "may have confessed" to the crime. (Docs. 21-2 at 69:8-13, 21-13). Landers McLarty took this as an admission to the theft and reported it as such, (Docs. 21-13, 21-15 at 2), but Guy contends that he was only stating his lack of knowledge on the subject, since the attorney met with Tadarius in private. (Doc. 21-2 at 69:8-13). Williams testified that the dealership believed that Guy gave the key in question to Tadarius. (Doc. 35 at 74:4-7). Tadarius was indicted for theft of the vehicle on February 28, 2013.[5] (Doc. 21-18).

Landers McLarty terminated Guy on March 20, 2013, purportedly for "[v]iolation of company policy that resulted in a financial loss for the company and/or employee is below acceptable performance standards." (Doc. 21-19). Guy was not eligible for rehire. (Doc. 21-19). Guy filed this action on December 12, 2014, alleging that Landers McLarty's given reason for his termination was pretextual, and that he was actually fired in retaliation for filing and settling an EEOC charge against the dealership, in violation of 42 U.S.C. § 1981. (Doc. 1). Landers McLarty moved for summary judgment on July 15, 2015. (Doc. 19).

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to

---

[5]While not particularly relevant, given that it occurred after Guy's termination, Tadarius was granted youthful offender status and sentenced to probation. (Doc. 21-2 at 130:17-25).

judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "examine the evidence in the light most favorable to the non-moving party," drawing all inferences in favor of such party. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Retaliation claims under § 1981, absent direct evidence of retaliation, are evaluated under the familiar *McDonnell Douglas* framework. *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009).[6] First, to establish a prima facie case of retaliation, "a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). If the employee meets this burden, the burden shifts "to the employer . . . [to] produc[e] legitimate, [non-retaliatory] reasons for the challenged employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519,

---

[6]Because § 1981 and Title VII retaliation claims employ the same standards, including the necessity of establishing "but for" causation, the court will cite authority relating to the two statutes interchangeably. *See Jones v. Suburban Propane, Inc.*, 557 F. App'x 951, 954-55 (11th Cir. 2014); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

1528 (11th Cir. 1997).

If the employer meets this "exceedingly light" burden, *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997) (quoting *Turnes v. Amsouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994)), the employee then "bears the burden of showing that the reasons offered were merely pretext," *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). An employee may prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "[T]o avoid summary judgment [the employee] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for [retaliation]." *Brooks v. Cty. Comm'n*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993)).

## A. Prima Facie Case

Landers McLarty challenges Guy's ability to establish the causal connection prong of his prima facie case. Under *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), Guy must show that Landers McLarty would not have terminated him but for its desire to retaliate against him for filing an EEOC charge against the dealership. Landers McLarty correctly argues that Guy cannot rely on temporal proximity alone

to establish a causal connection, *see Montgomery v. Bd. of Trs.*, No. 2:12-cv-2148-WMA, 2015 WL 1893471 (N.D. Ala. Apr. 27, 2015), but Guy does not rely solely on temporal proximity. Instead, Guy points to a conversation with Knox Williams, Landers McLarty's general manager, as indicative of a but-for causal connection. In that conversation, which allegedly took place while Guy's EEOC charge was still pending, Williams asked Guy if he planned to drop his EEOC charge. According to Guy, when he indicated that he would not drop the charge, Williams "became rather agitated . . . and called the meeting to an end." (Doc. 32-1 at 6). While Williams does not recall this conversation taking place, it is indicative at the summary judgment stage of Williams's potential animosity toward Guy for filing an EEOC charge and suffices to create a genuine issue of material fact as to a but-for causal connection.[7]

Landers McLarty argues that the court should not consider this conversation because Guy introduced it in a "self-serving affidavit," but the court is unconvinced. As Landers McLarty acknowledges, Guy first mentioned this conversation in his response to Landers McLarty's interrogatories. (Doc. 36 at 42). While his recollection of the conversation there is not as complete as in his

---

[7]Though not explicitly relied upon by Guy, the same is true of the dealership's offer to settle Guy's EEOC charge for more money if he resigned his position. (Docs. 21-2 at 134:10-135:1, 21-8 at 2). The court does not, however, accord any significance to Landers McLarty's opposition to Guy's entitlement to unemployment benefits. (Doc. 32-3).

later-submitted affidavit (Doc. 32-1), the two are not in conflict. If Landers McLarty wished to cross-examine Guy on the subject, it could have done so in Guy's deposition, but it did not. (*See* Doc. 21-2). Because the affidavit does not contradict but merely supplements Guy's earlier interrogatory response, the court will consider it. Guy has therefore presented sufficient evidence to demonstrate a but-for causal connection at this juncture.

**B. Pretext**

Landers McLarty contends that it fired Guy for his violation of the Key and Vehicle Use Policies, which caused financial loss to the dealership, as well as for poor sales performance. (*See* Doc. 21-19). This proffer satisfies Landers McLarty's "exceedingly light" burden to produce a non-retaliatory reason. *Holifield*, 115 F.3d at 1564. Guy argues, however, that the dealership's given reason was pretextual, and that he was actually terminated in retaliation for filing and settling an EEOC charge against Landers McLarty. After consideration of all the evidence and arguments, the court finds that Guy has not presented significantly probative evidence that Landers McLarty's given reason was pretextual. The court will group Guy's various arguments into five categories and discuss each in turn.

**1. Factual basis for proffered reason**

Guy challenges the factual basis for the dealership's belief that Guy gave the key in question to Tadarius, who used that key to

steal and wreck the car. Guy argues that (1) there is no evidence as to how the thief obtained the key, since Guy does not remember what happened to the key and there are several possibilities; (2) Tadarius told Guy he did not steal the car and Guy never told Landers McLarty otherwise; and (3) Tadarius' cell phone may have fallen out of his pocket while listening to music, not while stealing and driving the car

It is axiomatic that an employee may demonstrate pretext by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996) (en banc)). But "when a plaintiff chooses to attack the veracity of the employer's proffered reason, '[the] inquiry is limited to whether the employer gave an honest explanation of its behavior.'" *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1310-11 (11th Cir. 2012) (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). After all, "an 'employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) (quoting *Nix v. WLCU Radio/Rahall Commc'ns.*, 738 F.2d 1181, 1187 (11th Cir. 1984)). The inquiry is thus centered on the good-faith belief of

the employer, not whether the employee can demonstrate some minor flaw in the employer's given reason. *See Rawls v. Ala Dep't of Human Res.*, 507 F. App'x 895, 898 (11th Cir. 2013).

Guy's submitted evidence falls far short of what is necessary to seriously question the honesty of Landers McLarty's explanation. The dealership conducted a thorough investigation which produced, *inter alia*, the following facts: the key to the missing car was last checked out by Guy (Doc. 21-12 at 2); Guy regularly checked out car keys so that his son could sit in the cars at the dealership and listen to music (Doc. 21-2 at 70:21-71:1); the car was found abandoned after an accident, with Tadarius' cell phone inside (Doc. 21-12 at 7); the woman involved in the accident identified Tadarius out of a photo lineup as being involved (Doc. 21-14 at 2); Guy's niece told Guy that Tadarius confessed to taking the car and to the accident (Doc. 21-2 at 74:19-75:8); Guy took Tadarius to see an attorney and told Burt that Tadarius "may have confessed" to the crime (Docs. 21-2 at 69:8-13, 21-13); and Tadarius was indicted for theft of the vehicle (Doc. 21-18).

Based on this investigation, Williams, the general manager at Landers McLarty, testified that the dealership believed that Tadarius had taken the car using the key provided to him by Guy. (Doc. 35 at 74:4-7). The lack of conclusive evidence of the manner in which the key and car were taken from the dealership, the lack of an admission by Tadarius to Guy, and the possibility of

Tadarius' phone being in the car apart from the theft in no way overcome the thorough investigation and details uncovered to somehow show that Landers McLarty had any doubt about the reliability of the investigation. Despite Guy's arguments to the contrary, these perceived minor flaws do not demonstrate pretext.

## 2. Inconsistent enforcement of policies

Guy next argues that Landers McLarty enforced its policies harsher against him than against other employees, which can demonstrate pretext, *see Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001). To this end, Guy makes two separate but similar arguments. First, Guy argues and testified that other employees frequently violated the Key Policy by not turning in keys each night and seemingly violated the Vehicle Use Policy by allowing their children to sit in cars and listen to music, but the dealership did not discipline any of these employees. According to Guy, because he gave strict instructions to Tadarius not to drive the cars, but only to listen to music in them, Guy's alleged violation of the policies was no more serious than that of the other employees who were not disciplined, so the stricter enforcement of the policies against him demonstrates pretext. In the same vein, Guy argues that he did not violate the Vehicle Use Policy, which prohibits employees from "allow[ing] anyone to use" a vehicle without authorization, because the dealership's acceptance of others checking out vehicles so their children could

sit in them forecloses the dealership from now saying, as only against Guy, that this action constitutes impermissible "use" of the vehicle.

The court is unpersuaded by Guy's position. Guy would have the court find that his purported violation of the policies, which (in the apparent view of Landers McLarty) resulted in Tadarius taking and damaging the car, is no more worthy of discipline than the above-mentioned policy violations by other employees simply because Guy instructed his college-aged son not to drive the car to which he was given a key. The court finds the opposite to be true: Landers McLarty did not act improperly by imposing a harsher punishment on Guy than on the other violating employees precisely because of the damage caused by the respective violations. Guy's violation is not on the same level as the others simply because he instructed his son not to drive the cars, and the harsher treatment of Guy does not demonstrate pretext. For the same reason, this situation does not demonstrate that Landers McLarty interpreted its Vehicle Use Policy stricter against Guy than against the other employees. Whether or not sitting in a car at the dealership is considered "use" under the Vehicle Use Policy, Landers McLarty was justified in treating Guy differently because of the damage caused.

Second, Guy argues that many dealership employees violated many different terminable policies (some of whom did so repeatedly) but were not terminated, which demonstrates that Landers McLarty

pretextually treated him more harshly. *See Walker v. St. Joseph's/Candler Health Sys., Inc.*, 506 F. App'x 886, 889 (11th Cir. 2013) ("A typical means of establishing pretext is through comparator evidence. . . . A comparator is 'a similarly-situated employee who committed the same violation of work rules, but who was disciplined less severely than [the plaintiff].'") (quoting *Rioux v. City of Atlanta*, 520 F.3d 1269, 1276 (11th Cir. 2008). Most of the employee misconduct referenced by Guy, however, is wholly irrelevant because the employee conduct was completely different from Guy's alleged conduct. Such conduct includes drinking on the job, fighting with coworkers, sexual or racial harassment, and accepting payment in the form of bird dogs. (Docs. 32-15 at 12-13, 39-41, 53-56; 32-16 at 11; 32-17 at 25-26, 58-59). Given the vast differences in the conduct, the dealership's discipline of these employees cannot possibly demonstrate pretext.

As to those who committed misconduct arguably more similar to Guy's, the court still finds that none are proper comparators. *See Rioux*, 520 F.3d at 1280 ("The 'quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.'") (quoting *Burke-Fowler v. Orange Cty.*, 447 F.3d 1319, 1323 (11th Cir. 2006)). The policy violations of most of the employees cited by Guy only overlap with his because of Sales Policy violations. (*See* Docs. 32-15, 32-16, 32-17).

16

Because there is no evidence that those employees caused loss to the company by allowing others to use company vehicles, their misconduct can hardly even be described as similar to Guy's, much less nearly identical, so they will not be considered.

Only three of the alleged comparators violated the Vehicle Use Policy or caused direct loss to the dealership. One of them, Ed Mason, reportedly had some involvement with a wrecked car. He was immediately suspended pending investigation and resigned that same day. (Doc. 32-17 at 3-4). Even if Mason is considered a comparator, he was in no way treated better than Guy. If anything, he was treated worse, since he was immediately suspended pending investigation, while Guy was able to continue working during his investigation. The second, Bryan Dye, drove a company vehicle for personal use, was involved in a violent incident at the dealership, and received stolen property. Shortly after, Dye negotiated a termination agreement with Landers McLarty (he was paid $800) and was not eligible for rehire. (Doc. 32-15 at 43-51). Because Dye's conduct did not involve a car being stolen and damaged, but only that it was driven for personal use and returned, and given the dearth of details on his alleged receipt of stolen property, the court finds that Dye is not a proper comparator to Guy. Finally, Guy points to Jared Lake as a potential comparator. Lake was disciplined for many different issues, including absence/tardiness, sales, negligence, insubordination, and improper charging of $20 to

a company credit card. He appears to have been terminated twice and rehired after each termination. (Doc. 32-16 at 32-59). Lake's situation is hardly comparable to Guy's, as his violations spanned much different misconduct, and the only misconduct causing a direct loss to the company ($20 on a company credit card) is of nowhere near the same magnitude as theft of a car and required repair of two vehicles. Guy has therefore failed to demonstrate that other similarly situated employees were treated more favorably than he.

### 3. Eligibility for termination under Sales and Key Policies

Guy next argues that his termination was pretextual because he was not actually subject to termination under two of the policies he allegedly violated: the Key Policy said nothing about discipline and the Sales Policy only allowed discipline if a violation occurred during a probationary period, but Guy's write-ups did not occur during a probationary period. Guy's contention, however, does not demonstrate pretext. Guy's factual correctness on these points is itself unclear, since the Employee Handbook states that an employee may be terminated for violation of any policy and that the listed policies are non-exhaustive, so an employee may be terminated for other reasons as well. (*See* Doc. 32-4). But more fundamentally, Guy's position is incorrect because he ignores the fact that he was terminated for conduct that violated three policies, one of which (the Vehicle Use Policy) states: "[A]ny violation of this policy will result in immediate termination."

(Doc. 21-1). The fact that he may not have been eligible for termination under the Key and Sales Policies does not change the fact that he was eligible for termination under the Vehicle Use Policy. Landers McLarty's mentioning of non-terminable violations in connection with violation of a terminable policy in no way demonstrates pretext.

### 4. Consistency of given reasons for termination

Guy also contends that Landers McLarty has given inconsistent reasons for his termination, demonstrating pretext. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). Guy's termination form states that he was terminated for "[v]iolation of company policy that resulted in a financial loss for the company and/or employee is below acceptable performance standards." (Doc. 21-19). In its responses to Guy's interrogatories, Landers McLarty stated that Guy "was terminated for violation of the dealership's Key Policy, for violation of the dealership's Use of Company Vehicle Use Policy, and for the Plaintiff's unacceptable performance standards." (Doc. 21-16 at 2, ¶ 4). Guy argues that these two statements are inconsistent because the termination form uses "policy" as singular while the interrogatory response mentions two policies.

The court finds that the dealership has been completely consistent in its given reasons. The singular and plural uses of policy are not inconsistent, as "company policy" is commonly

understood as a reference to the sum of all of a company's policies – the termination form mentioned violation of "company policy," not "a company policy." Likewise, the interrogatory response's listing of the specific policies in no way contradicts the general description in the termination form. Guy has therefore demonstrated no inconsistency in the given reason for termination.

**5. Prima facie evidence**

This leaves only the evidence relied upon by Guy to establish his prima facie case: that Williams expressed displeasure with Guy's refusal to drop his EEOC charge and that Landers McLarty offered to settle the EEOC charge for a higher amount if Guy would resign his position. While this evidence is sufficient to establish a causal connection, the court finds that it, without more, falls far short of significantly probative evidence of pretext. It at most suggests that the dealership might have been motivated to concoct a reason to terminate Guy at some point in the future. But there is essentially no evidence that the reason actually given in this case was in fact concocted, as Guy has produced no significantly probative evidence that the specific given reason was in any way pretextual. Absent any evidence that the dealership's perceived displeasure was actually carried forward to his termination, then, the court cannot attach significantly probative weight to this evidence. Guy has therefore failed to demonstrate that Landers McLarty's given reason for his termination was

pretextual.

<b>CONCLUSION</b>

For the reasons stated above, Landers McLarty's motion for summary judgment (Doc. 19) will be GRANTED. A separate order will be entered.

DONE this 24th day of November, 2015.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE